**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| SHIRLEY PETERS, | ) | |
| Special Administrator of the Estate of | ) | |
| Jimmy Peters, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | 8:08CV453 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| COVENANT CARE MIDWEST, INC., | ) | |
| d/b/a Nebraska Skilled Nursing | ) | |
| and Rehabilitation, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the defendant's Motion for Summary Judgment (Filing No. 19).[1] The defendant filed a brief (Filing No. 21) and an index of evidence (Filing No. 20) in support of the motion. The plaintiff filed a brief (Filing No. 23) and an index of evidence (Filing No. 24) in opposition to the motion. The defendant filed a brief (Filing No. 26) and an index of evidence (Filing No. 27) in reply.

**BACKGROUND**

This action arises following Jimmy Peters' (Peters) death on March 27, 2008. **See** Filing No. 1 - Ex. A Complaint ¶ X; Filing No. 20 - Ex. D Death Certificate.[2] In February 2008, Apar Ganti, M.D. (Dr. Ganti), diagnosed Peters with metastatic non-small cell carcinoma. **See** Filing No. 24 - Ex. 1 Ganti Depo. p. 13, 15. Dr. Ganti determined the cancer originated in Peters' lung and had spread to his spine. **See _id._** at 16. Peters suffered collapse of a portion of the thoracic vertebrae, which caused complete paralysis of his lower extremities. **See _id._** at 12, 23. While receiving treatment at the University of Nebraska Medical Center (UNMC), Peters developed a pressure sore in the buttocks area.

---

[1] The undersigned magistrate judge is specially designated to exercise jurisdiction over this matter, pursuant to 28 U.S.C. § 636 and after the consent of the parties. **See** Filing No. 9.

[2] On June 27, 2008, the County Court of Burt County, Nebraska, appointed Shirley Peters as the Special Administrator of the Estate of Jimmy Peters, deceased. **See** Filing No. 1 - Ex. A Complaint ¶ I.

**See** Filing No. 24 - Ex. 2 Stanzel Depo. p. 134-135.  Peters received radiation therapy and chemotherapy, and was released to the defendant's facility on February 29, 2008.  **See** Filing No. 24 - Ex. 1 Ganti Depo. p. 13-14; Filing No. 1 Ex. A - Complaint ¶ IV.  On March 18, 2008, Dr. Ganti administered intravenous chemotherapy to Peters.  **See** Filing No. 24 - Ex. 1 Ganti Depo. p. 26-27.  Peters was readmitted to UNMC on March 24, 2008, at which time Peters had sepsis and a critically low white blood cell count.  **See** Filing No. 24 - Ex. 2 Stanzel Depo. p. 30-31, 49; *Id.* Ex. 1 Ganti Depo. p. 54-56.  Peters died three days later, on March 27, 2008.  **See** Filing No. 20 - Ex. D Death Certificate.  Peters' death certificate lists metastatic non-small cell lung cancer as the immediate cause of death and sepsis and bacteremia as other significant conditions.  **See** *id.*

The plaintiff alleges the defendant's negligent care was the direct and proximate cause of Peters' wrongful death.  **See** Filing No. 1 Ex. A - Complaint ¶ V, VII, IX; Filing No. 23 - Brief p. 3.  Specifically, the plaintiff alleges the defendant breached its duty of care to Peters in a number of ways including failing to provide a sanitary environment or practice proper wound care and wound prevention.  **See** Filing No. 1 Ex. A - Complaint ¶ VII.  The defendant admits it owed Peters a duty of reasonable care but denies it breached its duty of care, and further denies any such breach was the cause of Peters' death.  **See** Filing No. 1 Ex. B - Answer.

On July 13, 2009, the defendant filed the instant motion for summary judgment.  The defendant moves for summary judgment on the plaintiff's claims because the defendant asserts the plaintiff cannot establish a prima facie case for negligence.  **See** Filing No. 21 - Brief p. 4.  Specifically, the defendant argues expert testimony is required to establish causation in cases of medical malpractice, yet the plaintiff has no expert witness testimony to establish causation in this case.  **See** *id.* at 8-9.  The plaintiff opposes summary judgment.  The plaintiff contends genuine issues of material facts exist regarding the alleged breach of the defendant's duty of reasonable care and whether such a breach caused Peters' death.  **See** Filing No. 23 - Brief p. 7.  The plaintiff contends she is able provide evidence to establish a prima facie case for negligence through the expert testimony of Jacqueline Stanzel, R.N. (Nurse Stanzel).  **See** *id.* at p. 3.

### UNCONTROVERTED FACTS

1.      In December 2007, Peters, a previously healthy 76 year-old, traveled to the Creighton University Medical Center (Creighton) for testing to determine the cause of recent weight loss and fevers.  The tests failed to reveal any medical reason for this decline, but indicated possible infection.  **See** Filing No. 24 - Ex. 1 Ganti Depo. p. 11-12.

2.      On February 17, 2008, Peters returned to Creighton to undergo more testing, which indicated a vertebral body mass located around the T2 to T4 region.  **See *id.*** at 12-13.  Peters suffered a collapse of the T3 vertebral body which caused complete paralysis of the lower extremities.  **See *id.*** at 15-16, 20, 23.

3.      Peters was transferred to UNMC, where a biopsy of the mass revealed a stage IV "non-small cell carcinoma."  **See *id.*** at 13, 15.

4.      By February 22, 2008, while at UNMC, Peters developed pressure sores in his buttocks region.  **See *id.*** Ex. 2 Stanzel Depo. p. 133-135.

5.      Peters was admitted to the defendant's facility on February 29, 2008.  **See** Filing No. 1 Ex. A - Complaint ¶ IX.

6.      Despite the medical treatment provided at the defendant's facility, Peters' pressure sores grew in size and severity.  **See** Filing No. 20 - Ex. C Pressure Ulcer Evaluation Record.

7.      On March 24, 2008, Peters was readmitted to UNMC due to a drop in white blood cells and died three days later.  **See** Filing No. 24 - Ex. 1 Ganti Depo. p. 55; Filing No. 20 - Ex. D Death Certificate.

8.      The death certificate, signed by Jue Wang, M.D., on April 20, 2008, lists Peters' "immediate" cause of death as metastatic non-small lung cancer, with sepsis/bacteremia under "OTHER SIGNIFICANT CONDITIONS-Conditions contributing to this death but not resulting in the underlying cause given [above]."  **See** Filing No. 20 - Ex. D Death Certificate.

9.      The plaintiff's expert disclosure deadline was June 15, 2009.  **See** Filing No. 7 - Rule 26(f) Report p. 5 ¶ VI(B)(7); **see also** Filing No. 8 - Progression Order ¶ 10 (adopting parties' stipulation).  The only expert witness identified by the plaintiff was Nurse Stanzel.  **See** Filing No. 20 - Ex. E Plaintiff's Answer to Interrogatory No. 2.  Nurse Stanzel

opines the defendant breached its standard of care in the treatment of Peters' pressure sores.  **See *id.*** and Ex. F Stanzel Written Opinion.

### STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); **see *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009)**.  When making this determination, a court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, a court must "determine whether there is a genuine issue for trial."  ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)**.  A court must "look to the substantive law to determine whether an element is essential to a case."  ***Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 853 (8th Cir. 2003)**.  Additionally, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  ***Hervey v. County of Koochiching*, 527 F.3d 711, 719 (8th Cir. 2008)** (**quoting *Anderson*, 477 U.S. at 248** ).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose."  ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)**.

Additionally, Rule 56(e)(2) provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

See Fed. R. Civ. P. 56(e)(2).  A party seeking summary judgment bears the burden of informing a court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

fact."  *Celotex*, 477 U.S. at 323 (**quoting** Fed. R. Civ. P. 56(c)); **see** *Rodgers v. City of Des Moines*, 435 F.3d 904, 907-08 (8th Cir. 2006).  Specifically, the moving party "must show that 'there is an absence of evidence to support the nonmoving party's case.'"  *Nitro Distrib., Inc. v. Alitcor, Inc.*, 565 F.3d 417, 427 (8th Cir. 2009) (**quoting** *Celotex*, 477 U.S. at 325).  In the face of a properly supported motion, the burden then shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); *Border State Bank, N.A. v. AgCountry Farm Credit Servs.*, 535 F.3d 779, 782 (8th Cir. 2008).  A motion for summary judgment places an affirmative burden on the non-moving party to go beyond the pleadings and, by affidavit or otherwise, produce specific facts that show that there is a genuine issue for trial.  **See** Fed. R. Civ. P. 56(e); *Janis v. Biesheuvel*, 428 F.3d 795, 799 (8th Cir. 2005).

Under this court's local rules,

> The moving party must include in the brief in support of the summary judgment motion a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law.  <u>Failure to submit a statement of facts may be grounds to deny the motion.</u>

**See** NECivR 56.1(a)(1).

Additionally,

> The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts.  The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies.  <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

**See** NECivR 56.1(b)(1).

## ANALYSIS

State law supplies the rules of decision for a diversity action.  **See *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 612 (8th Cir. 2009)** (**citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)**).  The parties do not dispute Nebraska law applies. Accordingly, this federal court is bound by the decisions of the state's highest court when determining the merits of the parties' claims.  **See *id.***  The defendant seeks summary judgment on the plaintiff's claim.  Specifically, the plaintiff alleges the defendant is liable to her in negligence for the wrongful death of Peters because the defendant's negligent care of Peters caused his death.  **See** Filing No. 1 - Ex. A - Complaint ¶¶ VII, X.  The plaintiff asserts this is a case of professional negligence.  **See** Filing No. 23 - Brief p. 3.

"In a malpractice action involving professional negligence, the burden of proof is upon the plaintiff to demonstrate the generally recognized medical standard of care, that there was a deviation from that standard by the defendant, and that the deviation was the proximate cause of the plaintiff's alleged injuries."  ***Neill v. Hemphill*, 607 N.W.2d 500, 503-04 (Neb. 2000)** (**citing *McLauglin v. Hellbusch*, 591 N.W.2d 569 (Neb. 1999); *Doe v. Zedek*, 587 N.W.2d 885 (Neb. 1999)**).  "In any negligence case in which a plaintiff is claiming personal injury, the burden rests on the plaintiff to prove by a preponderance of the evidence each essential element of the negligence claim, including that the defendant's negligence was the proximate cause of the personal injury sustained."  ***Marmo v. IBP, Inc.*, No. 8:00CV527, 2005 WL 675806, at *2 (D. Neb. Jan. 28, 2005)** (**citing *Eiting v. Godding*, 214 N.W.2d 241, 243 (Neb. 1974)**).  More specifically,

> Where the claimed injuries are of such a character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science.  Such a question must necessarily be determined from the testimony of skilled professional persons and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries.

***Eiting*, 214 N.W.2d at 244.**  The Nebraska Supreme Court also explicitly stated expert testimony is generally required to show negligence in medical malpractice cases.  ***Keys***

*v. Guthmann*, 676 N.W.2d 354, 358 (Neb. 2004) (**citing *Walls v. Shreck*, 658 N.W.2d 686 (Neb. 2003)**)).

      The plaintiff argues she is able to prove each element of professional negligence, including causation, through the expert testimony of Nurse Stanzel.  **See** Filing No. 23 - Brief p. 3.  Nurse Stanzel has experience providing aid in long term care facilities, from September 1994, to April 1997, including as a nurse at a nursing home from June 1996, to April 1997.  **See** Filing No. 24 - Ex. 2 Stanzel Depo. p. 9; Filing No. 27 - Ex. 3 Stanzel Résumé.  Nurse Stanzel worked at Midlands Hospital in the Transitional Care Unit from January 1997, until October 1998.  *Id.*  Nurse Stanzel worked at Methodist Hospital from March 1998, until February 2007, in the Cardiac Unit and in the Emergency Department as a staff nurse.  *Id.*  Nurse Stanzel is currently the House Coordinator for several departments at Alegent Health Lakeside Hospital.  *Id.*  Generally, Nurse Stanzel opines Peters died as a result of the defendant's breach of the standard of nursing care.  **See** Filing No. 20 - Ex. F Stanzel Written Opinion; *Id.* Ex. E Plaintiff's Answer to Interrogatory No. 2; **see also** Filing No. 24 - Ex. 2 Stanzel Depo. p. 29-31, 45-48, 64.  Specifically, Nurse Stanzel opines Peters' immediate cause of death was sepsis.  *Id.* at 29.  Nurse Stanzel states it is her opinion that Peters would not have died absent his coccyx wound being contaminated with fecal matter because the contamination of the wound caused the fatal sepsis.  *Id.* Ex. 3 Stanzel Aff. ¶¶ 5, 9.

      The defendant denies the plaintiff can establish a prima facie case for professional negligence because she has failed to meet her burden of proof regarding causation.  **See** Filing No. 21 - Brief p. 4, 9.  Specifically, the defendant contends Nurse Stanzel is not qualified to testify as an expert witness regarding Peters' cause of death.  **See** Filing No. 26 - Reply Brief p. 8.  Additionally, the defendant contends Nurse Stanzel's affidavit, which for the first time addresses the causation issue, should be stricken under Federal Rules of Civil Procedure 26 and 56.  **See** *id.* at 6.

      The court begins by considering the sufficiency of Nurse Stanzel's affidavit for the purposes of the defendant's motion.  Rule 56 provides an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. . . .  The court may permit an affidavit

to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits." Fed. R. Civ. P. 56(e)(1). "The very purpose of summary judgment under Rule 56 is to prevent 'the assertion of unfounded claims or the interposition of specious denials or sham defenses.'" *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir. 1983) (**quoting** 10 C. Wright, et al., FEDERAL PRACTICE & PROCEDURE § 2712 (1983)). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own earlier testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (**citing** *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

The defendant argues Nurse Stanzel's affidavit is a sham affidavit because it contradicts Nurse Stanzel's previous sworn testimony from her deposition, and provides no foundation for her new beliefs regarding the issue of causation. **See** Filing No. 26 - Reply Brief p. 3. The defendant argues Nurse Stanzel's July 24, 2009, affidavit is contradictory because in her January 30, 2009, deposition, she testified she has participated in "maybe" twelve cases, but in her affidavit she states she has "participated in hundreds of cases where [her] opinion as to cause of death for a patient was relied upon." **See** *id.*; **compare** Filing No. 24 - Ex. 2 Stanzel Depo. p. 6, **with** *id.* Ex. 3 Stanzel Aff. ¶ 4. The defendant also argues Nurse Stanzel's affidavit is contradictory because the affidavit states Peters' cause of death was sepsis caused by contamination of his coccyx wound, but in the deposition, Nurse Stanzel testified Peters' cause of death was outside her scope or expertise. **See** Filing No. 26 - Reply Brief p. 3, 6; **compare** Filing No. 24 - Ex. 2 Stanzel Depo. p. 28-29, **with** *id.* Ex. 3 Stanzel Aff. The plaintiff contends Nurse Stanzel's indication that the cause of Peters' death was "outside of her scope" was taken out of context by the defendant, and Nurse Stanzel was referring generally to the filling out of a death certificate rather than Peters' cause of death. **See** Filing No. 23 - Brief p. 4.

The court finds Nurse Stanzel is consistent with regard to her statements when comparing her deposition and her affidavit. First, in Nurse Stanzel's deposition, when read in context, the court finds the nurse referred to the number of cases in which she has provided an opinion as an expert witness, outside her work-related responsibilities. In

8

contrast, Nurse Stanzel's affidavit refers more generally to the number of times she has provided an opinion to physicians regarding the cause of a patient's death, as part of her work at the hospital.  Second, Nurse Stanzel was referring to the task of filling out a death certificate rather than her ability to form an opinion regarding Peters' immediate cause of death because the duty of filling out a death certificate is beyond the scope of duty for a registered nurse, and instead requires a physician's signature.  Nurse Stanzel stated she would defer to the physician with regard to "forming an opinion as to the cause of death," but she did not agree with the physician who signed the death certificate.  **See** Filing No. 24 - Ex. 2 Stanzel Depo. p. 26-29.  Therefore, the court finds Nurse Stanzel's affidavit does not contradict her deposition, and her affidavit need not be disregarded as a sham affidavit.

The court now considers the timeliness of Nurse Stanzel's affidavit as an expert opinion under Rule 26 for the purposes of this motion.  Rule 26 states:

> [A] party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705. . . . [T]his disclosure must be accompanied by a report. . . .   The report must contain:  (i) a complete statement of all opinions the witness will express and the basis and reasons for them; . . . [and] (iv) the witness's qualifications.

Fed. R. Civ. P. 26(a)(2)(A)-(B).  "A party must make these disclosures at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(C).  A court may "preclud[e] experts from testifying when those experts were not timely disclosed pursuant to pretrial orders and local rules."  *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995) (**citing** *Harris v. Steelweld Equip. Co.*, 869 F. 2d 396, 399 (8th Cir. 1989)). Similarly, a court may limit an expert's admissible testimony to the content of a timely disclosure, as a sanction for failure to comply with the court's scheduling orders.  *Id.*

The defendant argues Nurse Stanzel's affidavit should be barred by Rule 26 because the plaintiff did not disclose Nurse Stanzel as a witness who would testify regarding Peters' cause of death prior to the plaintiff's June 15, 2009, deadline for expert witness disclosures.  **See** Filing No. 26 - Brief p. 6-7.  In the plaintiff's Answers to Interrogatories, the plaintiff stated Nurse Stanzel would testify "on the subject of nursing

care," and did not disclose any other expert witness.[3]  **See** Filing No. 20 - Ex. E Plaintiff's Answer to Interrogatory No. 2.  Although Nurse Stanzel discussed Peters' cause of death in her deposition, the first indication Nurse Stanzel would testify regarding the cause of death was contained in her affidavit.  Nurse Stanzel's affidavit was filed on July 30, 2009, in opposition to the defendant's motion for summary judgment.  **See** Filing No. 24 - Ex. 3 Stanzel Aff.  Because Nurse Stanzel's affidavit was not filed in a timely manner, the court finds, for purposes of this motion, Nurse Stanzel's affidavit will be barred as evidence of the cause of Peters' death.

In the alternative, the court will consider the admissibility of Nurse Stanzel's opinion as to cause of death.  Rule 702 states an expert witness must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  "Nurses are not qualified to testify as to the medical cause of injuries." ***Long v. Methodist Hosp. of Ind., Inc.**, 699 N.E.2d 1164, 1169 (Ind. Ct. App. 1998)*.  Additionally, "[w]hile a registered nurse may possess the education and skill necessary to testify as to the standard of care of a patient's treating nurses, a nurse is not competent to testify as to the patient's cause of death." ***Davies v. Holy Family Hosp.**, No. 25960-9, 2008 WL 458617, at *9 (Wash. Ct. App. Feb. 21, 2008)* (unpublished op.) (**citing** ***Colwell v. Holy Family Hosp.**, 15 P.3d 210, 213-14 (Wash. Ct. App. 2001)* (holding "a medical doctor must still generally connect [the decedent's] death to the alleged nursing deficiencies")).

The defendant argues Nurse Stanzel is unqualified to testify as an expert witness regarding the cause of Peters' death pursuant to the Federal Rules of Evidence Rule 702, thus her opinion regarding causation lacks foundation.  **See** Filing No. 26 - Brief p. 8, 10.  The plaintiff contends Nurse Stanzel satisfies the requirements of Rule 702 and her qualifications were established during her January 30, 2009, deposition.  **See** Filing No. 23 - Brief p. 7; **see also** Filing No. 24 - Ex. 2 Stanzel Depo. p. 25-26.

Nurse Stanzel earned a Bachelors of Science degree in nursing from Nebraska Methodist College in 1996, and has some experience working in long term care facilities.  **See** Filing No. 24 - Ex. 2 Stanzel Depo. p. 7-9; Filing No. 27 - Ex. 3 Stanzel Résumé.

---

[3]The record in this case contains no certificate of service for disclosure of expert witnesses in a document pursuant to NECivR 26.1(a), separate from the interrogatory responses.

Nurse Stanzel indicated she gained some knowledge reading laboratory reports through her experience as a registered nurse and became aware of the possible origin of the bacteria growing in Peters' blood cultures after consulting her pathophysiology book. **See** Filing No. 24 - Ex. 2 Stanzel Depo. p. 25-26. Nurses are not generally qualified to testify as expert witnesses regarding a patient's cause of death. The plaintiff has failed to show the court should make an exception in this case based on Nurse Stanzel's education, experience, and research.

As discussed above, expert testimony is required to show causation in this case. The plaintiff did not disclose an expert witness to give opinions about causation other than Nurse Stanzel, who was designated to give opinions about "the subject of nursing care." **See** Filing No. 20 - Ex. E Plaintiff's Answer to Interrogatory No. 2. Additionally, because Nurse Stanzel is not qualified to testify as an expert witness regarding the cause of death, in this case, and the plaintiff disclosed no other expert witnesses to testify about the issue of causation, the plaintiff will be unable to establish the defendant's professional negligence caused Peters' injuries or death. Without showing causation, the plaintiff will be unable to establish a prima facie case that the defendant was negligent in this case. Accordingly, the defendant's motion for summary will be granted. Upon consideration,

**IT IS ORDERED:**

1.      The defendant's Motion for Summary Judgment (Filing No. 19) is granted.

2.      This action and the plaintiff's Complaint are dismissed with prejudice.

3.      Pursuant to Fed. R. Civ. P. 58, a separate judgment will be entered on this date in accordance with this Order.

DATED this 21st day of September, 2009.

BY THE COURT:
 s/ Thomas D. Thalken
United States Magistrate Judge

---

[*]This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.